USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________No. 98-1603 SURIMA SUAREZ-CESTERO, ET AL., Plaintiffs, Appellants, v. DANIEL PAGAN-ROSA, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Prez-Gimnez, U.S. District Judge] ____________________ Before Torruella, Chief Judge, Coffin, Senior Circuit Judge, and Selya, Circuit Judge. _____________________ Jos R. Garc¡a-Prez, with whom Bufete Bennazar, C.S.P., wason brief, for appellants, except Clarizza Su rez. Lizzie M. Portela, with whom Paul B. Smith, Jr., and Smith &Nevares were on brief, for appellee Daniel Pag n-Rosa. Miguel A. Pag n-Rivera, with whom Rodolfo G. Ocasio-Bravo,Edwin D. Santos-Baerga and Pag n & Pag n were on brief, forappellee Ferd¡n Carrasquillo. ____________________ April 1, 1999 ____________________ TORRUELLA, Chief Judge. Plaintiffs-appellants challengethe district court's dismissal of their equitable claim on thegrounds of mootness. We affirm on a different ground. Because this case turns principally on its proceduralposture, we do no more than skim the facts. See CCM Cable Rep.,Inc. v. Ocean Cost Properties, Inc., 48 F.3d 618, 619 (1st Cir.1995). Plaintiffs are the owners in fee simple of a parcel ofland in the Median¡a Baja Ward of the Municipality of Lo¡za in theCommonwealth of Puerto Rico. One of the plaintiffs-appellants,Surima Su rez-Cestero, has a contract for the extraction of sandfrom the property and a Department of Natural Resources and theEnvironment ("DNRE") permit for its extraction. She alleges thatthe extraction of sand is the first phase of the development of aresidential project. Su rez allegedly sought and received approval for theproject from the Puerto Rico Aqueduct and Sewers Authority, thePuerto Rico Electric Power Authority, the Department ofTransportation and Public Works, the Institute of Puerto RicanCulture, the Puerto Rico Telephone Company, the Puerto RicoEnvironmental Quality Board, as well as from the Municipality ofLo¡za and the DNRE. Plaintiffs-appellants allege that althoughthe sand extraction was incidental to the project, as approved bythe above agencies, the DNRE additionally required that Su rezobtain an extraction permit. Su rez complied with all of theapplication requirements and, after public notice and withoutopposition, the permit was issued in December 1996. Plaintiffs-appellants claim that they relied on the permit and commenced sandextraction in January 1997. On April 29, 1997, the Municipality filed a civil actionin the Carolina Superior Court requesting a temporary restraining order and temporary and permanent injunctions to prevent theextraction of sand from the property. It averred that theconstruction permits requested for the development project were asubterfuge for obtaining a commercial sand extraction permit whichwould create an artificial lake without properly evaluating theindividual and cumulative environmental impact on the surroundingarea. The Superior Court issued a temporary restraining order. Needless to say, civil and administrative proceedingsresulted. As part of the administrative proceedings, on June 6,1997, the Secretary of the DNRE issued a Cease and Desist and ShowCause Order against Su rez enjoining her from further extractionactivities and ordering her to show cause why the permits shouldnot be modified and/or revoked. On June 24, Su rez filed an answerand requested an administrative hearing. After the CarolinaSuperior Court refused to issue the permanent injunction (anddissolved the earlier restraining order), Su rez notified the DNREthat its Cease and Desist Order was no longer valid because theMunicipality's action had been dismissed, and that she was going toresume extraction activities. On August 8, Pag n-Rosa, Secretaryof the DNRE, notified Su rez that the administrative proceedingsagainst her were to continue and that any request or petitionshould be presented by motion in the administrative case. Su rezthen requested that the administrative case be dismissed. When itwas not, believing that the Cease and Desist Order constituted acontinuing violation of their due process rights, plaintiffs-appellants filed a verified complaint and request for a temporaryrestraining order in federal district court on August 19, 1997. The hearing on the requested injunctive relief was setfor September 24. On September 23, 1997, the Governor of PuertoRico signed into law Joint Resolution of the Senate No. 398. Thestatute declared a year-long moratorium on the issuance of sandextraction permits by the DNRE in Lo¡za, and stayed theeffectiveness of all existing permits, pending an environmentalstudy of the impact of sand extraction in the area. In its Opinion and Order, the district court dismissedplaintiffs-appellants' claim for equitable relief on the ground ofmootness because "an injunction enjoining defendants frominterfering with plaintiff's sand extraction activities would be,in fact, of no benefit to plaintiffs, since they are equallyimpeded by [Senate Joint resolution No. 398]." Opinion and Orderat 9. "[C]ourts of appeal will reverse a district court'sdenial of a preliminary injunction only if the district courtabused its discretion." American Bd. of Psychology and Neurology,Inc. v. Johnson-Powell, 129 F.3d 1, 2-3 (1st Cir. 1997). We conclude that the district court acted within itsdiscretion in refusing to entertain the claim for preliminaryinjunctive relief at the start of the moratorium period, albeit fora different ground than that cited by the district court. In orderto gain a preliminary injunction in the First Circuit, a plaintiffmust satisfy four criteria. The court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.Planned Parenthood League of Massachusetts v. Bellotti, 641 F.2d1006, 1008-09 (1st Cir. 1981). Irreparable harm is a necessary precondition to apreliminary injunction and, given the moratorium on sand extractionin place, none existed here. By definition, the court's refusal togrant a preliminary injunction caused plaintiffs no harm since theywere equally impeded by the moratorium. As a result, plaintiffs-appellants were not entitled to a preliminary injunction. In theory, the district court should have dismissed onlythe request for a preliminary injunction, not the request for apermanent injunction -- which the district court did by denying allequitable relief. Nevertheless, to the degree that the moratoriumis no longer in existence, the plaintiffs can renew their requestfor temporary equitable relief; and the time to consider permanentinjunctive relief will come at the close of the case, and will notbe foreclosed either by the lower court's ruling or by this court'sopinion. Affirmed.