[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16706
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 30, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-14087-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONALD H. GATES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 30, 2009)

Before TJOFLAT, EDMONDSON and CARNES, Circuit Judges.

PER CURIAM:

# I. BACKGROUND

Donald H. Gates appeals his conviction for attempting to persuade a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). In this case, Detective Spector of the St. Lucie County Sheriff's Office posed as a 15-year-old boy named Joey in an online chat room. Gates chatted with Joey online about them having sex and described his prior sexual relationship with A.K., a 16-year-old boy, in Connecticut. Gates arranged to meet Joey in person, where he was arrested. After a two-day jury trial, Gates was convicted and sentenced to 135 months' imprisonment, a lifetime term of supervised release, and a $100 special assessment. This is his appeal.

# II. DISCUSSION

A. *Sufficiency of the Evidence*

Gates challenges his conviction on several grounds. First, he contends that the government offered insufficient evidence at trial to prove that he attempted to persuade, induce, entice, or coerce a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). "We review the sufficiency of evidence to support a conviction de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor

2

of the jury's verdict." [1] United States v. Taylor, 480 F.3d 1025, 1026 (11th Cir. 2007).  We will not disturb the jury's verdict "unless no trier of fact could have found guilt beyond a reasonable doubt."  United States v. Lyons, 53 F.3d 1198, 1202 (11th Cir. 1995).

Section 2422(b) provides:

Whoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, *or attempts to do so*, shall be fined under this title and imprisoned not less than ten years or for life.

18 U.S.C. § 2422(b) (emphasis added).  Gates was convicted of attempt under the statute because no actual minors were involved.  See United States v. Root, 296 F.3d 1222, 1227 (11th Cir. 2002) (holding that an actual minor is not required for a § 2422(b) attempt conviction; it is sufficient that the defendant believe a minor is involved).  Gates' conviction requires a showing that he: (1) had the specific intent to engage in the criminal conduct for which he was charged and (2) took a substantial step toward commission of the offense.  United States v. Murrell, 368

---

[1]At the close of the government's case, Gates made a motion for judgment of acquittal under Fed. R. Crim. P. 29.  Gates argued that he was entitled to an acquittal because he was entrapped as a matter of law.  Because Gates did not state that he was moving for a judgment of acquittal on the ground that the evidence introduced by the government was insufficient to sustain a conviction under § 2422(b), the government asserts that he failed to adequately preserve any sufficiency of the evidence argument other than entrapment, and we should apply plain error review.  Because we conclude no error occurred, we assume without deciding that Gates adequately preserved this issue.

F.3d 1283, 1286 (11th Cir. 2004).

The first element of attempt requires that Gates acted with the specific intent to persuade, induce, entice, or coerce Joey to engage in unlawful sexual activity. See id. (explaining that "[t]he underlying criminal conduct that Congress expressly proscribed in passing § 2422(b) is the persuasion, inducement, enticement, or coercion of the minor rather than the sex act itself."). The evidence at trial showed that Gates initiated contact with Joey and that Joey told Gates he was under-age multiple times. Gates asked Joey about his prior experiences with an older man and described his own sexual encounters with a boy close to Joey's age. Gates suggested meeting Joey and discussed having oral sex with him. Gates also accepted a picture of a teenage boy that Detective Spector sent him as Joey's picture. Based on this, we conclude that a reasonable jury could have found Gates had the specific intent to persuade, induce, entice, or coerce Joey to engage in unlawful sexual activity.

The second element of attempt requires that Gates took a substantial step toward the commission of the underlying crime. "A substantial step can be shown when the defendant's objective acts mark his conduct as criminal and, as a whole, 'strongly corroborate the required culpability.'" United States v. Yost, 479 F.3d 815, 819 (11th Cir. 2007) (quoting United States v. Murrell, 368 F.3d 1283, 1288

(11th Cir.2004)).  The evidence at trial showed that Gates discussed having oral sex with Joey and drove to meet him at the appointed time and place.  At the time of his arrest, Gates had a pornographic movie in his VCR presumably to show Joey because Gates had discussed watching pornographic movies with him.  Viewing the totality of Gates' actions, we conclude that a reasonable jury could have found that the substantial step element of the offense was met.

Gates also asserts that the district court erred by failing to conclude that he was entrapped as a matter of law.  Entrapment is an affirmative defense, consisting of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant.  United States v. Brown, 43 F.3d 618, 623 (11th Cir. 1995).  "The defendant bears an initial burden of production to show government inducement.  Once the defendant makes this initial showing, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime."  Id. (internal citations omitted).

Whether a defendant was entrapped is generally a jury question.  Id. at 622.  "Therefore, entrapment as a matter of law is a sufficiency of the evidence inquiry."  Id.  When the jury rejects the defendant's entrapment defense, "our review is limited to deciding whether the evidence was sufficient for a reasonable jury to conclude that the defendant was predisposed to [commit the crime]."  Id.  The

jury's verdict cannot be overturned if "any reasonable construction of the evidence would allow the jury to find the defendant guilty beyond a reasonable doubt." Id. Our review is de novo, "but we . . . view all facts and make all inferences in favor of the government." Id.

The predisposition inquiry is "necessarily a fact-intensive inquiry because it is a subjective inquiry into a defendant's state of mind." Id. at 625. The purpose of the inquiry is to assess "the defendant's readiness and willingness to engage in the charged crime absent any contact with the government's officers or agents." Id. at 624. Gates asserts that the government offered insufficient evidence at trial to prove predisposition. In support of his position, Gates argues that the government relied solely on his prior relationship with A.K. to prove that he was predisposed to commit the charged offense. He asserts that his prior relationship with A.K. was insufficient to establish predisposition because A.K. was above the age of consent at the time of their sexual encounters. Gates asserts that a prior lawful sexual relationship with a minor does not establish predisposition to engage in unlawful sexual activity with a minor.[2]

The government offered sufficient evidence of predisposition. The evidence

---

[2]Gates' sexual relationship with A.K. occurred in Connecticut. The age of consent in Connecticut is 16. See Conn. Gen. Stat. § 53(a)-71. Because A.K. was 16 at the time of their relationship, it was presumably lawful.

6

at trial showed that Gates initiated contact with Joey online. During their first conversation, Gates asked Joey about his prior sexual experiences with an older man and described his own sexual experiences with A.K., a boy close to Joey's age. Gates told Joey that he liked younger guys because he related "very well" to them. During a subsequent conversation, Gates proposed meeting Joey for dinner and a movie and discussed having oral sex with him. Viewing this evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the verdict, we conclude that this evidence was sufficient for a reasonable jury to find Gates was predisposed to commit the charged offense.

We conclude that the government offered sufficient evidence from which a reasonable jury could find that Gates attempted to persuade a minor to engage in an unlawful sexual activity and was not entrapped.

B. *Admissibility of Evidence*

Gates further contends that the district court committed several errors during his trial and that the cumulative effect of those errors requires reversal. When applying the cumulative error doctrine, claims are first assessed individually before considering their effect on the trial as a whole and reversal is only required if, viewing the trial as a whole, the defendant received a fundamentally unfair trial. United States v. Calderon, 127 F.3d 1314, 1333 (11th Cir. 1997).

Gates argues that evidence of his prior relationship with A.K. was improperly admitted under Fed. R. Evid. 404(b). He asserts that his prior relationship with A.K. was not relevant because it was legal under Connecticut law and did not involve the Internet. Further, Gates contends that it was not probative concerning his state of mind. And, Gates asserts that the government was required to prove his relationship with A.K. was illegal before evidence of the relationship could be admitted under Rule 404(b).

We review the admission of Rule 404(b) evidence for abuse of discretion. United States v. Ellisor, 522 F.3d 1255, 1267 (11th Cir. 2008). Evidence of prior bad acts, which include "crimes, wrongs [and] acts," may be admitted only for purposes other than proof of bad character. Fed. R. Evid. 404(b). Rule 404(b) evidence is subject to a three-part test for admissibility: (1) the evidence must be relevant to an issue other than the defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; and (3) the government must offer sufficient proof so that the jury could find the defendant committed the act. Ellisor, 522 F.3d at 1267. Similarity between the prior bad act and the charged conduct will make the prior offense highly probative of the defendant's intent in the charged offense. United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005). Rule 404(b) is a rule of inclusion which allows prior

8

bad acts evidence unless it tends to prove only criminal propensity. United States v. Cohen, 888 F.2d 770, 776 (11th Cir. 1998).

Gates' argument that the district court abused its discretion in admitting evidence of his prior relationship with A.K. is without merit. Gates' contention that prior acts must be illegal to be admissible under Rule 404(b) is contrary to the plain language of the rule. See Kapordelis, 569 F.3d at 1313 ("Rule 404(b) straightfowardly provides for the admission of evidence of 'other crimes, wrongs, or acts' and is not limited to criminal acts."). Evidence of Gates' prior relationship with a minor was relevant to the issue of his intent in communicating with Joey. The prior relationship was highly probative of his intent because A.K. was nearly the same age as Joey and Gates' expressed a desire to engage in similar sexual activities with Joey.

Gates also contends that the district court improperly admitted evidence that he owned a pornographic magazine containing images of "young men" of legal age. Gates asserts that his ownership of the magazine was irrelevant and unduly prejudicial. Because Gates failed to raise this issue at trial, we review it only for plain error. See United States v. Vance, 494 F.3d 985, 993 (11th Cir. 2007) (When a defendant does not raise an evidentiary issue before the district court, the issue is reviewed for plain error.). Plain error exists "only where (1) there is an error; (2)

9

the error is plain; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity or public reputation of a judicial proceeding." Id. Gates' argument is without merit. The district court did not admit the magazine into evidence. Only a photograph of the magazine's cover was admitted, and the photograph was only mentioned in passing. It was merely one photograph among many documenting the items in Gates' bedroom. We conclude no plain error occurred.

Gates also asserts that the district court improperly admitted Detective Spector's testimony concerning the legality of a man of Gates' age going to the movies with a minor. Spector's testimony was given on cross examination and no objection was made by Gates. We will not review this issue because Gates' invited any error. See United States v. Bornscheuer, 563 F.3d 1228, 1238 (11th Cir. 2009) (observing that a defendant invites erroneous admission of evidence by eliciting such evidence on cross examination).

Gates did not identify any evidence admitted in error and thus the cumulative error doctrine does not require reversal.

## C. Prosecutorial Misconduct

Ordinarily, we review de novo claims of prosecutorial misconduct, which are mixed questions of law and fact. United States v. Eckhardt, 466 F.3d 938, 947

10

(11th Cir. 2006). However, with respect to a prosecutor's statements made during closing where the defendant did not raise the objection at trial, we review only for plain error "that is so obvious that failure to correct it would jeopardize the fairness and integrity of the trial." United States v. Merrill, 513 F.3d 1293, 1306-07 (11th Cir. 2008). Gates made no objection and thus we review for plain error.

"To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991). "In order to assess the prejudicial impact of a prosecutor's statements, we must evaluate them in the context of the trial as a whole and assess their probable impact on the jury." United States v. Hernandez, 145 F.3d 1433, 1438 (11th Cir. 1998). A defendant's substantial rights are prejudicially affected only when "a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." Merrill, 513 F.3d at 1307. Thus, "where there is 'sufficient independent evidence of guilt, any error is harmless.'" Id.

Gates contends that the government's closing argument improperly shifted the burden of proof to him to establish that he was not entrapped. The government is not permitted to make burden-shifting arguments that suggest to the jury that the defendant has the burden to produce evidence or prove his innocence. But

11

improper government remarks are rendered harmless by adequate jury instructions regarding the government's burden of proof. United States v. Simon, 964 F.2d 1082, 1086-87 (11th Cir. 1992). Here, the district court instructed the jury that the government had the burden of proof and that Gates was not required to produce any evidence. Thus, any error in the government's remarks touching on the burden of proof was harmless.

Gates also argues that the government improperly commented on his post-arrest silence when it argued that he did not assert before trial that he was entrapped. In Doyle v. Ohio, 426 U.S. 610, 619, 96 S. Ct. 2240, 2245 (1976), the Supreme Court held that a defendant's due process rights are violated when his silence following his arrest and after receiving Miranda warnings is used for impeachment purposes. The Doyle rule "rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial." Hill v. Turpin, 135 F.3d 1411, 1413 (11th Cir. 1998) (internal quotation marks omitted). However, the Doyle rule is inapplicable when "the prosecutor's comments merely inquire[ ] into prior inconsistent statements." United States v. Dodd, 111 F.3d 867, 869-70 (11th Cir. 1997). Those comments "make[ ] no unfair use of silence because a defendant who voluntarily speaks after receiving Miranda warnings has

12

not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." Id. (quoting Anderson v. Charles, 447 U.S. 404, 408, 100 S. Ct. 2180, 2182 (1980)).

Gates made post-arrest statements to Detective Spector in which he admitted to arranging the meeting with Joey and discussing with him the possibility of having oral sex. During closing arguments, the government asserted that Gates never told Detective Spector he was entrapped, stating "Never once did [Gates] tell Detective Spector you know what, had you guys [not] done this, I never would have gone to meet him. You guys set me up. That never happened. Not until now." The question is whether the government's comment addressed Gates' failure to offer exculpatory evidence upon arrest, or whether it addressed the context of Gates' statements following his arrest. The government's comments here can reasonably be read to refer to the inconsistency between Gates' entrapment defense and his post-Miranda statements to Detective Spector. Gates claimed at trial that he was entrapped by the police. Gates admitted to Spector, however, that he regularly talked to teenagers online, arranged to meet Joey, and discussed having oral sex with him. We conclude that no plain error occurred.

Gates also asserts that the government made three misstatements of fact in its closing arguments. First, Gates observes that the government incorrectly stated

13

that the cadet who called Gates and pretended to be Joey was a teenage child. In fact, the cadet was a college student. We are satisfied that this misstatement could not have so affected Gates' substantial rights as to constitute plain error. Second, Gates contends that the government incorrectly suggested that he had used the Internet to meet minors in the past. We conclude that to the extent the statement was factually inaccurate, it did not affect Gates' substantial rights. Third, Gates asserts that the government incorrectly stated that he was the first person in the online chat with Joey to bring up sex. We are not convinced the government's comment was a misstatement of fact. Joey volunteered to Gates that he was gay shortly after Gates' initiated the conversation. However, Joey only admitted that he had a boyfriend and one prior "experience" upon questioning from Gates. We find no plain error.

*D. Jury Instructions*

Gates also contends that he is entitled to a new trial because four jury instructions in his case were incorrect. Ordinarily, "[w]e review the legal correctness of a jury instruction <u>de novo</u> but defer [to the district court] on questions of phrasing absent an abuse of discretion." <u>United States v. Prather</u>, 205 F.3d 1265, 1270 (11th Cir. 2000) (internal citations omitted). District courts "have broad discretion in formulating jury instructions provided that the charge as a

14

whole accurately reflects the law and the facts." United States v. Arias, 984 F.2d 1139, 1143 (11th Cir. 1993) (internal quotation marks omitted). "[W]e will not reverse a conviction on the basis of a jury charge unless the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process." Prather, 205 F.3d at 1270 (internal quotation marks omitted). When a party fails to object to a jury instruction in the district court, we review the instruction for plain error. Id. "Jury instructions will be reversed for plain error only if, the charge, considered as a whole, is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice, or the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Behety, 32 F.3d 503, 511 (11th Cir. 1994) (internal quotation marks omitted).

Further, when a party indicates to the district court that a jury instruction is acceptable, invited error occurs and that jury instruction may not be challenged on appeal. See United States v. Silvestri, 409 F.3d 1311, 1337 (11th Cir. 2005) ("When a party responds to a court's proposed jury instructions with the words 'the instruction is acceptable to us,' such actions constitutes invited error. These words serve to waive a party's right to challenge the accepted instruction on appeal." (internal citations omitted)).

15

Gates contends that the district court's 404(b) instruction constitutes reversible error. Gates argues that the district court erred by instructing the jury that it could consider his prior lawful relationship with A.K. to determine whether Gates' intended to engage in unlawful sexual activity with Joey. Gates' argument is without merit. As noted above, "other acts" admissible under Rule 404(b) are not limited to criminal acts. Kapordelis, 569 F.3d at 1313. The fact that Gates' prior relationship with A.K. was legal in Connecticut does not preclude it from being considered by the jury. The district court's Rule 404(b) instruction was not error.

Gates also contends that the district court's attempt instruction erroneously suggested that attempting to engage in sexual activity with a minor was the crime charged, rather than attempting to persuade or coerce a minor. Because Gates did not object to the attempt instruction, we review it only for plain error. See Prather, 205 F.3d at 1207. There was no error. The district court's instruction followed the pattern jury instructions and provided an accurate statement of the law. See Pattern Crim. Jury Instr. 11th Cir. OI 80 (2003).

Gates further contends that the district court's instruction on entrapment failed to make it sufficiently clear to the jury that the government had the burden of proving that Gates was predisposed to commit the crime. We will not review the

16

entrapment instruction because Gates' agreed to it and thereby invited any error. See Silvestri, 409 F.3d at 1337 (finding that a defendant invited error by indicating that the proposed jury instructions were acceptable).

Finally, Gates asserts that the district court created confusion regarding the government's burden of proof on intent by instructing the jury on the definitions of "knowingly" and "willfully" at an "odd" place. No error occurred. The placement of those definitions was within the district court's discretion. See Prather, 205 F.3d 1270.

We conclude that the district court's instructions to the jury were proper and do not constitute reversible error. Accordingly, we affirm Gates' conviction.

**AFFIRMED.**