# United States Court of Appeals
## For the First Circuit

No. 03-1332
    03-2142

ALMA MATOS, BY AND THROUGH HER FATHER, JUAN MATOS,
Plaintiff, Appellant,

v.

CLINTON SCHOOL DISTRICT ET AL.,
Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Selya and Howard, Circuit Judges,

and Singal,* District Judge.

David E. Ashworth and Beverly B. Chorbajian for appellant.
    Nancy F. Pelletier, with whom Dorothy Varon and Robinson
Donovan, P.C. were on brief, for appellees.

May 11, 2004

*Of The District of Maine, sitting by designation.

**SELYA**, **Circuit Judge**.  Plaintiff-appellant Alma Matos appeals from the district court's denial of preliminary injunctive relief.  She has filed two appeals, the second of which is wholly derivative of the first.[1]  We treat the matter, as have the parties, as a single appeal, exercising appellate jurisdiction under 28 U.S.C. § 1292(a)(1).  After careful perscrutation of the record, we find that the appeal is largely moot.  What remains justiciable does not warrant disturbing the district court's order.

Because this appeal turns principally on its procedural posture, we offer only a decurtate account of the facts.

The plaintiff matriculated at Clinton High School.  By the fall of 2002, she had reached her senior year.  She ranked near the top of her class and was a member of the National Honor Society (NHS).  On December 18, 2002, the plaintiff's academic career took a turn for the bizarre.  We paraphrase her account of the relevant events.

During a journalism class, the plaintiff began using a school computer to complete an assignment.  She claims to have lapsed into some private thoughts (which, as matters turned out, involved an alleged sexual dalliance between her teacher and the principal of the high school).  She typed those thoughts into the

_____

[1]After the district court denied the plaintiff's motion for a preliminary injunction, she appealed.  She then moved for a stay and filed a second notice of appeal upon the denial of that motion.

computer, printed out her handiwork, returned to her seat, and placed what she had written among her personal papers.

The teacher became suspicious and demanded to see the document. When the plaintiff refused, the teacher resorted to self-help. Before she could read the paper, however, the plaintiff snatched it from her hand. Finding this behavior intolerable, the teacher escorted the plaintiff to the principal's office. The principal read the document, deemed it offensive, and summoned the plaintiff's mother to the school for a discussion. Presumably because he himself was implicated, the principal advised the plaintiff's mother that he would refer the matter to the vice-principal. By letter dated December 30, 2002, the vice-principal suspended the plaintiff from school for ten days. The suspension letter, addressed to the plaintiff's parents, attributed her suspension to "[p]rofanity, inappropriate use of a computer and defamation of character."

Hot on the heels of this suspension, the plaintiff sued the Clinton School District and a gallimaufry of individual defendants (including the principal, the vice-principal, and the teacher). Her complaint invoked 42 U.S.C. § 1983 and asserted, inter alia, claims that the defendants had (i) deprived her of procedural due process incident to the suspension, (ii) abridged her right of free expression, (iii) invaded her right of privacy, and (iv) conducted an unlawful search and seizure. The complaint

-3-

prayed for an amalgam of relief, including a temporary restraining order (TRO) and a preliminary injunction.

The district court granted a TRO ex parte. A few weeks later, the court heard the matter on the plaintiff's motion for a preliminary injunction. That motion requested five strains of preliminary injunctive relief: (i) an order allowing the plaintiff to return to school immediately; (ii) a mandatory injunction requiring the defendants to expunge any reference to the incident from the plaintiff's high-school records "until Defendants have complied with the due process requirements of state law and the Clinton High School Student Handbook regarding student suspensions"; (iii) an order enjoining the defendants from notifying colleges about the suspension; (iv) an order prohibiting the defendants from altering the contents of the computer on which the plaintiff had been working at the time of the incident; and (v) an order barring the defendants from taking any adverse action with respect to the plaintiff's status as an NHS member.

On February 11, 2003, the district court filed a thoughtful rescript dissolving the TRO and denying the motion for preliminary injunction in its entirety. Matos v. Clinton Sch. Dist., Civ. No. 03-40010, slip op. (D. Mass. Feb. 11, 2003) (unpublished). This proceeding ensued.

We need not tarry. It is apodictic that a federal appellate court may only exercise jurisdiction over actual cases or

controversies. U.S. Const. art. III, § 2, cl. 1. The case-or-controversy requirement applies independently to the underlying action and to any appeal arising therefrom. See, e.g., Roe v. Wade, 410 U.S. 113, 125 (1973) (explaining that "an actual controversy must exist at stages of appellate . . . review, and not simply at the date the action is initiated"); Thomas R.W. v. Mass. Dep't of Educ., 130 F.3d 477, 479 (1st Cir. 1997) (same). As to the latter, a cognizable case or controversy must exist not merely at the time an appeal is taken, but at all subsequent stages of appellate review. See County Motors, Inc. v. Gen. Motors Corp., 278 F.3d 40, 43 (1st Cir. 2002); Oakville Dev. Corp. v. FDIC, 986 F.2d 611, 613 (1st Cir. 1993). If events occur following the institution of an appeal that make it impossible for the appellate court to provide effective relief, the case or controversy is no longer justiciable. See Newspaper Guild of Salem v. Ottaway Newspapers, Inc., 79 F.3d 1273, 1277 (1st Cir. 1996); CMM Cable Rep., Inc. v. Ocean Coast Props., Inc., 48 F.3d 618, 621 (1st Cir. 1995).

This is an interlocutory appeal. It is brought for the sole purpose of testing whether the district court abused its discretion or otherwise erred in denying certain preliminary injunctive relief. The aim of a preliminary injunction "is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's

merits, more effectively to remedy discerned wrongs." <u>CMM Cable Rep.</u>, 48 F.3d at 620. Allowing an immediate appeal of an order granting or denying a preliminary injunction is an exception to the final judgment rule. The exception arises out of a desire to prevent irreparable harm to parties "who, otherwise, might triumph at trial but be left holding an empty bag." <u>Id.</u> When this harm-preventing function cannot be served by the successful prosecution of an interlocutory appeal from the grant or denial of preliminary injunctive relief, then the justiciability of the appeal itself is, to that extent, called into question. <u>Id.</u> at 621.

It is against this backdrop that we turn to the five strains of interim injunctive relief originally requested by the plaintiff. The posture of the case has changed in significant ways since the plaintiff initially made her motion for a preliminary injunction: to name two, she has served her ten-day suspension and has graduated from Clinton High School. Thus, her first prayer — that a preliminary injunction issue to compel the defendants to forgo the suspension and reinstate her immediately — no longer presents a live controversy. This court lacks the power to turn back the clock and, accordingly, this aspect of the appeal is moot.

Similarly, the plaintiff's third prayer — that the defendants be enjoined <u>pendente</u> <u>lite</u> from notifying colleges about her suspension — is by the boards. The plaintiff has completed the college application process and now attends a college of her

choice. Thus, this aspect of the appeal also has been rendered moot by the passage of time.

So too the plaintiff's fifth prayer for preliminary injunctive relief. The NHS is a high-school honor society, and the plaintiff had sought to have the defendants preliminarily enjoined from taking any steps that might adversely affect her status as a member of that organization. However, the NHS has held a hearing and determined not to revoke the plaintiff's membership. The plaintiff is no longer a high-school student and, therefore, her NHS membership is in no further jeopardy. Under the circumstances, the fifth prayer for preliminary injunctive relief has become moot.

The plaintiff suggests that her other prayers for relief suffice to keep her appeal buoyant. These prayers collectively encompass her requests for expungement of her high-school record and for preservation of the computer. As now framed,[2] neither matter is moot in the technical sense. See, e.g., Coady Corp. v. Toyota Motor Distribs., Inc., 361 F.3d 50, 61-62 (1st Cir. 2004). The plaintiff retains a continuing interest both in the contents of her high-school record (which may again become relevant as she

---

[2]The plaintiff's second prayer asked only that the defendants be ordered to purge the records "until Defendants have complied with the due process requirements of state law and the Clinton High School Student Handbook regarding student suspensions." Because the suspension has been served and the plaintiff has graduated, that prayer, strictly speaking, also is moot. The plaintiff, however, now argues that she really wanted a broader form of expungement pendente lite. Rather than quibble over doctrines such as waiver and forfeiture, we meet this argument head-on.

looks ahead to graduate school or real-world employment) and in ensuring that the computer is not corrupted. But even though intervening events have not destroyed our ability to grant the requested relief on an interim basis, these surviving prayers are too asthenic to support a preliminary injunction. We explain briefly.

The preliminary injunction standard is familiar. Under it, a district court typically must consider four elements: the probability of the movant's success on the merits, the prospect of irreparable harm absent the injunction, the balance of the relevant equities (focusing upon the hardship to the movant if an injunction does not issue as contrasted with the hardship to the nonmovant if it does), and the effect of the court's action on the public interest. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996); Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991). We need not discuss three of these elements. In most cases — and this case is no exception — irreparable harm is a necessary threshold showing for awarding preliminary injunctive relief. See, e.g., Phillips v. Marsh, 687 F.2d 620, 622 (2d Cir. 1982). Inasmuch as the plaintiff has failed to demonstrate a realistic prospect of irreparable harm, she has not crossed that threshold.

To the extent that the plaintiff focuses on her fourth prayer for preliminary injunctive relief, she simply cannot show

any real danger of harm.  She claims that she remains fearful that the defendants, if not enjoined, may "tamper[] with the hard drive of the computer."  Appellant's Reply Br. at 3.  This fear is objectively unreasonable.  The defendants have had possession of the computer since the incident occurred.  For most of that time — well over fourteen months, as of this writing — they have not been under any court order to preserve its hard drive.  If the defendants have not tampered with the computer during the lengthy interval that elapsed after the lifting of the TRO, there is no plausible basis for speculating that such tampering will occur before the case is tried.

A preliminary injunction should not issue except to prevent a real threat of harm.  Ross-Simons, 102 F.3d at 19; 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2948.1, at 153-54 (2d ed. 1995).  A threat that is either unlikely to materialize or purely theoretical will not do.  Ross-Simons, 102 F.3d at 19; Pub. Serv. Co. v. Town of W. Newbury, 835 F.2d 380, 382 (1st Cir. 1987).  An imminent threat that evidence will be lost is one thing — but a claimed threat, unaccompanied by any showing of reasonable grounds for believing that the evidence in question is imperilled, is insufficient to warrant the entry of a prophylactic injunction.  Humble Oil & Ref. Co. v. Harang, 262 F. Supp. 39, 42-43 (E.D. La. 1966).  Preliminary

injunctions are strong medicine, and they should not issue merely to calm the imaginings of the movant.[3]

The plaintiff's reliance on her second prayer for preliminary injunctive relief is no more rewarding. That prayer entails her demand that her high-school records be purged temporarily of any reference to the incident and/or the suspension. She asserts that this information, if allowed to stand in the institution's records, could harm her in the future should she apply to graduate schools or require any kind of security clearance.

We agree that this issue, overall, remains a matter of concern: the plaintiff's high-school records are something in which she has a continuing interest. Nevertheless, that is not tantamount to saying that she is entitled to protect that interest by means of a preliminary injunction. The claim for expungement lacks immediacy; the record reflects no reason why that relief, if due, cannot await a full-dress trial. If a case can be adjudicated on the merits before the harm complained of will occur, there is no sufficient justification for preliminary injunctive relief.

---

[3]If more were needed — and we doubt that it is — tampering with the computer would leave the defendants open to a charge of spoliation of evidence. See, e.g., Blinzler v. Marriot Int'l, Inc., 81 F.3d 1148, 1158 (1st Cir. 1996); Nation-Wide Check Corp. v. Forest Hills Distribs., Inc., 692 F.2d 214, 217 (1st Cir. 1982). Given that the main case remains to be tried and that the plaintiff is seeking substantial damages, the presence of that deterrent further reduces any risk of tampering.

Holiday Inns of Am., Inc. v. B & B Corp., 409 F.2d 614, 618 (3d Cir. 1969); 11A Wright, Miller, & Kane, supra § 2948.1, at 149.

That rule applies here. The plaintiff is more than three years away from college graduation. She has alleged no short-term intention of applying for either admission to a graduate school or employment requiring a security clearance. Absent something that indicates a need for immediate relief, a plaintiff's request for a preliminary injunction ordinarily ought to be rejected. See, e.g., Pub. Serv. Co., 835 F.2d at 382-83; Phillips, 687 F.2d at 622. So it is here.

We need go no further. While the plaintiff's complaint raises a number of claims that remain live, the passage of time and the occurrence of a series of easily predictable events have minimized any need for a preliminary injunction. Her motion for such relief is, for the most part, moot. What little of it remains justiciable presents no adequate basis for a finding of irreparable harm.[4] For these reasons, we summarily reject her appeal.

**Affirmed**.

---

[4]Should circumstances again change prior to trial so as to present a cognizable danger of irreparable harm, the plaintiff remains free to renew her motion for a preliminary injunction. See Holiday Inns of Am., 409 F.2d at 618-19.